UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FELICIA A. o/b/o O.A.,

                                        Plaintiff,

   v.                                                               5:23-CV-668 (MJK)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

FELICIA A., Plaintiff pro se
SHANNON FISHEL, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

Plaintiff commenced this action pro se on behalf of her daughter, O.A. ("claimant" or "O.A."), pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No. 5). Both parties filed submissions, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

**I.**    **PROCEDURAL HISTORY**

On May 7, 2020, plaintiff filed an application for Supplemental Security Income ("SSI") on behalf of her daughter, O.A., alleging disability as of that date.

1

(Administrative Transcript ("T") 68, 89, 157-63). Plaintiff's application was denied initially on July 6, 2020 (T. 68, 90-95), and again on reconsideration on January 14, 2021 (T. 89, 99-104). At the request of the plaintiff, Administrative Law Judge ("ALJ") Robyn Hoffman conducted a telephone hearing on July 23, 2021, during which plaintiff testified. (T. 28-50). On March 4, 2022, the ALJ issued a decision finding O.A. was not disabled under the Social Security Act. (T. 11-22). This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 18, 2023. (T. 1-7).

## II.     PLAINTIFF'S PRO SE STATUS

A non-attorney parent ordinarily cannot represent a child's interests pro se. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). The Second Circuit has, however, carved out an exception for SSI applications so long as the district court "determines that [the] non-attorney parent . . . has a sufficient interest in the case and meets basic standards of competence." *Machadio v. Apfel,* 276 F.3d 103, 107 (2d Cir. 2002). In actions seeking judicial review of a final administrative decision of the Commissioner of Social Security, a parent with custody of the child and who would likely be the representative payee generally has a "significant stake in the outcome of the litigation" because the child's qualification for disability benefits will affect the parent's responsibility for the child's expenses. *Id.* at 107. "A parent likely 'meets basic standards of competence' if the parent properly represented the minor child before the Commissioner and the parent's abilities have not changed since those proceedings." *Edmonds on behalf of S.B.P. v. Comm'r of Soc. Sec.*,

No. 21-CV-8178, 2021 WL 4865259, at *1 (S.D.N.Y. Oct. 14, 2021) (citing *Machadio v. Apfel,* 276 F.3d at 106-08).

In order to assist in making a determination as to the above standards, the court held a July 15, 2024 on-the-record conference with plaintiff and counsel for defendant. At the conference, plaintiff advised that upon O.A.'s receipt of any benefits, plaintiff would be responsible for administering such funds for the care of O.A., as she does with her other two children, who currently receive disability benefits. Plaintiff further stated that she received her GED and is currently enrolled at a community college working toward her associate degree.  Plaintiff was most recently employed as a hairstylist and a babysitter in 2023.  She currently dedicates her time to being a student and caregiver for her children.  Plaintiff represented O.A. throughout the administrative process of applying for benefits, and stated that she was sufficiently able to communicate the relevant information to the ALJ during the administrative hearing.

Based upon plaintiff's representations at the July 15th conference, as well a plenary review of the administrative transcript and the instant docket, this court concludes that plaintiff has a sufficient interest in representing her daughter O.A.'s interests.  Furthermore, the court concludes that plaintiff meets the minimal threshold of "basic standards of competence" necessary to proceed pro se on behalf of her daughter. Accordingly, the court will proceed with its analysis of the parties' contentions.

### III.    GENERALLY APPLICABLE LAW

####    A.    Disability Standard

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment,

which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). *See Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *3-4 (N.D.N.Y. Apr. 30, 2009) (discussing the standard for children's disability benefits).

The agency has developed a three-step process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then by statute and by regulation, the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examination of whether he or she suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If the child is found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1. *Id.* Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an

impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

"Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or medically equal the criteria for a listed impairment. Analysis of functionality involves considering how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established by finding an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete

activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## IV. FACTS

The claimant O.A., born on February 25, 2018, was two years old on the SSI application date and three years old at the time of the administrative hearing. (T. 38, 157). At the time of the hearing, claimant lived with her mother, two siblings and cousin. (T. 38, 47). Plaintiff testified that O.A. had a developmental and speech delay. (T. 39-40). O.A. had been receiving therapy services through an early intervention program, including speech therapy and occupational therapy, and was transitioning into preschool where she would continue to receive services. (T. 40-41).

The record includes plaintiff's educational and medical history. Rather than summarizing these records at the outset, I will refer to the pertinent records during my discussion of the parties' arguments.

## V. THE ALJ'S DECISION

As the first step in her analysis, the ALJ found that O.A. had not engaged in substantial gainful activity since May 7, 2020, the filing date of the application for benefits. (T. 12). Next, the ALJ determined that O.A.'s "developmental disorder speech/language" was a severe impairment. (*Id.*) At the third step, the ALJ found that

O.A. did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. (*Id.*). The ALJ continued her analysis, and found that O.A. did not have an impairment or combination of impairments that functionally equaled the severity of a Listed Impairment under the regulations. (T. 13).

In making her functional equivalency determination, the ALJ considered the medical evidence, O.A.'s academic records, various reports prepared by several consulting medical experts, standardized testing results, and a questionnaire completed by one of O.A.'s teachers. (T. 14-21). Based upon her review of the evidence, the ALJ found that O.A. had less than marked limitations each of the six domains - acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, the ability to care for herself, and health and physical well-being. (T. 18-21).

The ALJ also evaluated plaintiff's hearing testimony, and concluded that plaintiff's statements about the intensity, persistence and limiting effects of O.A.'s impairments were not entirely consistent with the record evidence. (T. 18). Because O.A. did not have "marked" limitations in two or more of the functional domains, and did not have an "extreme" limitation in any one domain, the ALJ concluded that O.A. was not disabled from the date of the application for benefits. (T. 21-22).

## VI.    ISSUES IN CONTENTION

Given that Plaintiff is proceeding *pro se*, the Court is mindful of its obligation to "engage in a searching inquiry when deciding whether substantial evidence supports an administrative fact finding, whether or not a *pro se* litigant is perceptive enough to

identify a specific evidentiary deficiency." *Smith v. Comm'r of Soc. Sec.*, No. 5:12-CV-1879 (GLS/ESH), 2014 WL 3392336, at *4 (N.D.N.Y. July 10, 2014) (citing *Monette v. Astrue*, 269 F. App'x 109, 110 (2d Cir. 2008)). In doing so, the Court has held plaintiff's "pleadings to less stringent standards than formal pleadings drafted by lawyers" and has construed them "to raise the strongest arguments that they suggest." *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016) (internal quotations and citations omitted).

The Commissioner contends that the underlying decision is supported by substantial evidence, and free from legal error. (Defendant's Brief ("Def.'s Br.") at 4-8) (Dkt. No. 16). In response, plaintiff filed a letter submission with exhibits, in which she states that O.A.'s disability claim "has not received a thorough due diligence review other than moving from one court to the other . . . ." (Dkt. No. 19 at 1). Plaintiff further maintains that the "new evidence" submitted since the ALJ's decision has been "ignore[ed]," and contends that the Commissioner further erred in failing to "interview with [O.A.'s] care Team, Doctors, Agencies that performed evaluations and Proper review of [O.A.'s] IEP . . . ." (*Id.*). Plaintiff asks the court to consider O.A.'s recent diagnoses of Attention Deficit Hyperactive Disorder ("ADHD") and Autism in its review on appeal. (*Id.*). The Commissioner responded to plaintiff's letter submission arguing that the new evidence submitted by plaintiff on appeal does not warrant a remand pursuant to sentence six of 42 U.S.C. § 405(g).

For the following reasons, this court agrees that remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted.

## VII.   **DISCUSSION**

In light of the essentially non-adversarial nature of a social security proceeding, it is well established that an ALJ has an affirmative obligation to develop the administrative record. *See, e.g., Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). This duty is heightened where, as here, a plaintiff properly waives her right to counsel and proceeds pro se. *Id*. at 113. More specifically, an ALJ has a duty to adequately protect a pro se plaintiff's rights by ensuring that all of the relevant facts are sufficiently developed and considered. *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). However, the ALJ is required to seek out additional evidence only where there are obvious gaps in the record. *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014). The ALJ is not obligated to seek additional medical records where the record evidence is sufficient for the ALJ to make a disability determination. *Johnson v. Comm'r of Soc. Sec'y*, No. 16-CV-831, 2018 WL 1428251, at *5 (W.D.N.Y. March 22, 2018).  Nor is the "absence of a medical source statement from [a] claimant's treating physicians [ ] fatal to the ALJ's determination," where there are no "obvious gaps" in the administrative record and where the ALJ already possesses a complete medical history.  *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (citing *Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x 29, 33–34 (2d Cir. 2013); *see also Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (holding that ALJ did not need to acquire a medical source statement from the treating physician when the ALJ had all of the treatment notes from the Plaintiff's treating physicians).

In addition to medical evidence, an ALJ evaluating a child's disability claim may consider evidence from nonmedical sources, including parents and school employees. See 20 C.F.R. § 416.924a(a)(2). Such evidence includes "teacher questionnaires, teacher checklists, group achievement testing, and report cards." *Id*. § 416.924a(b)(7)(ii). The Commissioner "will ask for any reports that the school may have that show the results of formal testing or that describe any special education instruction or services . . . or any accommodations[.]" *Id*. § 416.924a(a)(2)(iii).

In this instance, the ALJ based her disability determination on four medical opinions provided by non-examining state agency medical consultants – pediatricians M. Mantello, M.D. and S. Gandhi, M.D., and psychologists J. Ochoa, Psy.D. and H. Ferrin, Ph.D. (T. 69-88). The ALJ further relied on a Teacher Questionnaire that was completed by O.A.'s special education teacher, Pamela Morris. (T. 197-207). Although there is no opinion from O.A.'s primary care physician, or any other treating or examining source, the ALJ obtained and reviewed O.A.'s longitudinal treatment records from her primary care provider, spanning from her first visit and examination at eight days old. (T. 284-490, 552-73, 608-35). Furthermore, the record contains several evaluations, reports, and service plans prepared by the various agencies and schools that worked with O.A. (T. 272-83, 442-47, 510-24, 598-607, 640-48, 675-77, 680-83, 729).

As a threshold matter, the opinions of consultative examiners and state agency non-examining consultative physicians can constitute substantial evidence in support of an ALJ's decision. The Social Security Regulations describe non-examining state agency consultants as "highly qualified and experts in Social Security disability," and

11

their opinions constitute substantial evidence where they are consistent with other medical evidence of record. *See* 20 C.F.R. § 416.913a(b)(1); *see also Diaz v. Shalala*, 59 F.3d 307, 212 n.5 (2d Cir. 1995) (stating that the regulations "permit the opinions of nonexamining sources to override treating sources' opinions provided that they are supported by evidence in the record"); *Ronald S. v. Comm'r of Soc. Sec.*, No. 20-CV-1688, 2022 WL 3716568, at *18 (W.D.N.Y. Aug. 29, 2022) ("Contrary to Plaintiff's suggestion that [the state agency examiner's] opinion could not constitute substantial evidence because he did not examine Plaintiff . . . , state agency medical consultants are highly qualified and experts in Social Security disability evaluation, and their prior administrative findings must be considered").

On the other hand, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin,* 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.,* 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018). A medical opinion may be stale if it does not account for the plaintiff's deteriorating condition. *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). Remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, (2d Cir. 2020).

Here, the nonexamining state agency consultants were the only medical sources to provide opinions regarding O.A.'s functional abilities, and these opinions were generated 20 and 14 months prior to the ALJ's disability determination, respectively. Consequently, these opinions did not consider standardized testing results generated over the course of the following year and a half concluding that, among other things, plaintiff's cognition, social emotional development, and adaptive behavior were all within the "poor" range compared to her agemates, that she demonstrated continued delays in her receptive and expressive development, she was not consistently using words to functionally communicate her wants and needs, her fine motor skills were delayed and assessed to be "very poor," and that she had definite dysfunction in processing sensory input in seven out of eight functional areas at home. (T. 598-606).

The effects of the state agency consultants' arguably stale opinions were compounded by the ALJ's less-than-compelling explanation for her functional equivalency evaluation, which generally mirrored the state agency consultants' findings. The ALJ found the state agency consultants' opinion that O.A. had no more than "less than a marked" limitations in any of the six domains to be generally persuasive. (T. 18). The ALJ concluded that their opinions were "supported with details and citations to the record[.]" (*Id.*). The evidence available for the state agency consultants' review included plaintiff's primary care medical records, an April 30, 2019 Early Intervention Core Evaluation ("April 2019 Evaluation") (T. 442-47), an October 23, 2019 Onondaga County Early Intervention Core Evaluation ("October 2019 Evaluation") (T. 272-78), an October 30, 2019 Occupational Therapy Evaluation

13

("October 2019 OT Evaluation") (T. 279-83), and Ms. Morris' June 1, 2020 Teacher Questionnaire (T. 197-203). Admittedly, the state agency consultants' functional equivalency evaluation includes citations to the record relative to each domain. (T. 72-75, 83-85). However, the extent to which these citations constituted "support" for the state agency consultants' conclusions is subject to further scrutiny, as further discussed below.

In the domain of interacting and relating with others, state agency consulting psychologist Dr. Ochoa concluded that O.A. had less than marked limitations. (T. 73). He supported this finding as follows:

> 10/23/19 Early Intervention Eval – DAYC-2 70 in social-emotional skills, poor range. Per evaluator, communication skills are below age-level expectations.
>
> PLS-5 total language score of 66, expressive language 75, and receptive language 61.
>
> Claimant did not engage in relational play and does not constantly respond to her name. She typically does not look in the direction of an object when parent points and names object. She does not babble two syllables consistently. She can play simple turn taking games. She relies on nonverbal communication to request and get needs met.

(*Id.*). Upon reconsideration, Dr. Ferrin provided an identical opinion. (T. 84). Dr. Ochoa and Dr. Ferrin's narratives are generally limited to citing significant deficiencies in O.A.'s functioning in this domain. Without more, the court cannot construe how the noted evidence constitutes "support" for the conclusion that O.A. had less than marked limitations. Notably, the October 2019 Evaluation cited by these sources specifically

indicates that O.A. tested slightly over two standard deviations below the mean in the areas of adaptive behavior, communication, and social-emotional skills.  (T. 278).  According to the regulations governing functional equivalency determinations for children,

> [i]f you are a child of any age (birth to the attainment of age 18), we will find that you have a marked limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. 926a(e)(2)(iii).  The state agency consultants failed to address, much less reconcile, the impact of O.A.'s testing results with their opinion, or explain how they came to the conclusion that O.A. had less than marked limitations in this domain, notwithstanding her test results.

  The ALJ's functional equivalency evaluation, in which she concurred that O.A. had less than marked limitations in the domain of interacting and relating with others, also misses the mark.  Like the state agency medical consultants, the ALJ cited to evidence of record indicating that O.A. "can hardly ever been understood," "does not have any words," demonstrated "poor social-emotional skills," has expressive language skills and communication skills that were each determined to be "below age-level expectations," has social-emotional development that fell into the "poor range," exhibits "continued delays in her receptive and expressive language development," and "spoke[ ] few words that were understandable to her examiner."  (T. 20).  The ALJ then cited to three reports in April and August of 2021, noting that O.A. had made "progress" and

15

"improvement" in her communication skills and social and emotional development. (T. 20). Nevertheless, the court cannot conclude that the evidence relied on by the ALJ constituted substantial evidence for the ALJ's determination that O.A. had less than marked limitations in this domain, particularly where the state agency medical consultants failed to reasonably support their findings, and there is no medical opinion to support the ALJ's premise that the general improvement noted was of a magnitude to render O.A.'s limitations less than marked.[1]

Likewise, in the domain of caring for oneself, the same consulting psychologists opined that O.A. had less than marked limitations. (T. 73-74, 85). They provided the following narrative in support of their findings:

> Per parents [claimant] unable to chew food on own and frequently chokes and gags. She does not use utensils independently or use a sippy cup. She cooperates with dressing and undressing. DAYC-2 adaptive skills domain is 67. Claimant has tantrums where she will cry, scream, and throw herself on the floor.

(T. 73-74, 85). It is unclear to the court how this explanation, without more, can be reasonably interpreted to support a finding of less than marked limitations in this domain. The state agency consultants note O.A.'s standard score of 67 in the adaptive skills domain, which the October 2019 Evaluation specifies places O.A. in the "very poor range." (T. 273-74). Notably, the regulations identify, among other things, a "disturbance

---

[1] The state agency consultant opinions were generated in July 2020 and January 2021, respectively. (T. 74, 85). Thus, they did not have the benefit of reviewing any medical or nonmedical evidence generated after that date, including the April and August 2021 records relied on by the ALJ noting "improvement" in this domain. Furthermore, the court notes that these records noting improvement were generated less than two months after O.A.'s February 3, 2021 evaluation, which the ALJ recognized as noting several, arguably significant, deficiencies in this domain.

in eating or sleeping patterns" as an example of limited functioning in this domain. *See* 20 C.F.R. § 14.926a(k)(3)(vi). Although this does not necessarily compel a conclusion that O.A. has a "marked or "extreme" limitation, *see id.* at §14.926a(k)(3), the state agency psychologists' limited explanation does not, without more, reasonably endorse their conclusions.

      The ALJ concurred with the state agency consultants' determination that O.A. had less than marked limitations in the ability to care for herself. (T. 21). The ALJ recognized the same limitations noted by the consulting psychologists, including reports of O.A.'s limitations for chewing food on her own, frequent choking and gagging, failure to use utensils independently, and inability to remove or put on clothes independently. (*Id.*). The ALJ further recognized that as of February 2021, O.A. continued to struggle with many of the same limitations, and her adaptive behavior development continued to be in the "poor range" when compared to her agemates. (*Id.*). The ALJ concluded her analysis by stating,

> Although the claimant was noted by her [toddler program] to have displayed some improvement in her adaptive behavior on April 27, 2021 and August 26, 2021, [O.A.] was still found to be in need of extra visuals, demonstrations, and step-by-step guidance for self-help tasks.

(*Id.*). For the same reasons as previously set forth, namely the deficiencies in the state agency consultants' analyses and the absence of any other medical opinion evidence quantifying the degree to which O.A.'s subsequent "improvement" rendered her limitations less than marked in this domain, the court is unable to conclude that ALJ's determination is supported by substantial evidence.

In sum, the state agency medical consultants and the ALJ failed to sufficiently assess the evidence of record with respect to at least two of the pertinent domains of functioning – interacting and relating to others and the ability to care for oneself. Given the brevity of the analyses in these domains, and the existence of conflicting evidence which was not reconciled by the ALJ in her decision, it is impossible for this court to assess whether proper legal standards were applied, and to find that the ALJ's conclusions are supported by substantial evidence. "[I]n reviewing an administrative agency's decision, a court should not be compelled to guess at the theory underlying the agency's action.' " *Berry v. Schweiker,* 675 F.2d 464, 469 n. 3 (2d Cir. 1982), *citing SEC v. Chenery Corp.,* 332 U.S. 194, 196–197 (1947). Where, as here, the ALJ's rationale is unclear, the matter must be remanded for further findings and detailed explanation. *Id.* Moreover, this is not a case "[w]here the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose." *Martinez v. Commissioner,* 262 F. Supp. 2d 40, 49 (W.D.N.Y. 2003).

Because the ALJ erred in her assessment of at least two domains of functioning, and because a finding of "marked" impairments in both of those domains would direct a finding of disability, remand is required so that the Commissioner can develop the record as appropriate, apply the proper legal standards in weighing the evidence of record, reconcile any conflicting evidence and/or explain her reasons for rejecting such evidence, and set forth her findings and reasoning in greater detail.

On a final note, plaintiff has submitted to this court for review, in conjunction with her appeal, approximately 200 pages of medical and nonmedical documentation which

this court construes as a request for remand pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of "new evidence."  As the Commissioner points out in his brief, the majority of the evidence submitted by plaintiff is duplicative of evidence already contained in the administrative record.  In any event, given that the case is being remanded for the independent grounds discussed above, pursuant to sentence four of 42 U.S.C. § 405(g), it is unnecessary to perform the three-part test prescribed in *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) for determining whether any new evidence provides a basis for remand under sentence six of 42 U.S.C. § 405(g). Upon remand, the ALJ will consider all appropriate evidence.

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 19) be **GRANTED**; and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (Dkt. No. 16) be **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision and Order.[2]

Dated: August 7, 2024

Mitchell J. Katz
U.S. Magistrate Judge

---

[2] To the extent Plaintiff's motion for judgment on the pleadings seeks remand under sentence six of 42 U.S.C. § 405(g), the court denies this request as moot given the alternative rulings previously set forth.